UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA RONQUILLO,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 to 10,<br>　　　　　　　　　Defendant. | Case No.: 3:20-cv-1413-W-WVG<br><br>**ORDER GRANTING MOTION TO REMAND [DOC. 12]** |

　　　Pending before the Court is Plaintiff Irma Ronquillo's motion to remand this case to the San Diego Superior Court.  Defendant opposes.

　　　The Court decides the matter on the papers submitted and without oral argument. See Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the motion [Doc. 12] and **ORDERS** the case remanded.

//

//

//

//

## I. RELEVANT BACKGROUND

This case arises from Plaintiff Irma Ronquillo's purchase/lease of a used 2018 BMW X1 SDR 28I (the "Vehicle") from BMW of El Cajon. (*Compl.* ¶ 4.[1]) According to Plaintiff, the vehicle was covered by an express written warranty, by which Defendant BMW of North America, LLC "undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time." (*Id.* ¶ 5.) The Complaint alleges, however, that during the warranty period, the "Vehicle contained or developed defect(s), which have manifested in, to include but not limited to: failing engine resulting in the engine running rough/chugging, back up camera becoming stuck, loss of power, fuel tank malfunctioning, and faulty ignition coils and spark plugs." (*Id.* ¶ 6.)

On June 3, 2020, Plaintiff filed a lawsuit against Defendant in the San Diego Superior Court. The Complaint asserts six causes of action for: (1) Violation of Subdivision (D) of Civil Code § 1793.2; (2) Violation of Subdivision (B) of Civil Code § 1793.2; (3) Violation of Subdivision (A)(3) of Civil Code § 1793.2; (4) Breach of Express Written Warranty (Civ. Code, § 1791.2, Subd. (a); § 1794); (5) Breach of the Implied Warranty of Merchantability (Civ. Code § 1791.1; § 1794); and (6) Violation of Business and Professions Code § 17200. (*Compl.* ¶¶ 4–32.) Plaintiff seeks, among other things, the entire purchase price, actual damages, restitution, a civil penalty of two times Plaintiff's actual damages, consequential and incidental damages, reasonable attorney's fees and costs, and prejudgment interest at the legal rate. (*Id.* ¶ 16, prayer ¶¶ A–G.)

On July 22, 2020, Defendant removed the case to this Court based on diversity jurisdiction. (*Notice of Removal* [Doc. 1].) Plaintiff now moves to remand, arguing that Defendant cannot establish the amount in controversy exceeds $75,000. (*P&A* [Doc. 12-1] 4:6–11:15.) Defendant responds that the amount-in-controversy requirement is

---

[1] The Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit A [Doc. 1-2].

satisfied by aggregating the statutory repurchase, a civil penalty, injunctive relief, attorney's fees, and other damages.  (*Opp'n* [Doc. 14] 1:6–9.[2])

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." Id. (internal citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (internal citations omitted).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id.

To determine whether the amount in controversy has been met on removal, "[t]he district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).  Where the state-court complaint does not specify an exact damage figure, the defendant "must provide evidence that it is 'more likely than not' that the amount in controversy" satisfies the federal diversity-jurisdiction requirement. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).

---

[2] Plaintiff also argues that remand is required because Defendant cannot meet its burden of proving citizenship.  (*Mot. to Remand* [Doc. 12-1] 11:16–12:12.)  Because the Court finds the amount in controversy requirement has not been satisfied, remand is appropriate without analyzing the parties' citizenship.

### III. DISCUSSION

The Complaint does not specify a damage figure. Defendant, therefore, bears the burden of establishing the amount in controversy exceeds $75,000.

With respect to restitution, the parties appear to agree that under the Song-Beverly Act, the amount at issue is $41,587.92, representing the Vehicle's purchase price. (*Opp'n* 9:20–22; *Reply* [Doc. 16] 5:12–13.) Defendant concedes this amount is reduced based on a mileage or usage deduction totaling $3,603.25. (*Opp'n* 12:1–18.) Thus, based solely on Plaintiff's request for restitution, the amount in controversy is $39,984.67. To avoid remand, Defendant must establish that an additional $35,016.33 in civil penalties, attorney's fees and/or injunctive relief is at issue.

#### A.   Civil Penalty

Defendant argues the amount in controversy should include a civil penalty of $83,175.84. (*Opp'n* 9:7–9.) This consists of a civil penalty in the amount of two times Plaintiff's actual damages ($41,587.92) under the Song-Beverly Act. (*Id.* 8:20–9:12.) In support of this argument, Defendant cites Brady v. Mercedes-Benz USA, Inc., 243 F.Supp.2d 1004 (N.D. Cal. 2002), and Luna v. BMW of N. Am., LLC, 2018 WL 2328365 (S.D. Cal. May 22, 2018). (*Id.* 12:20–13:7.)

In Brady, the court found the amount in controversy requirement was met by, among other things, including the Song-Beverly Act's civil penalty of twice the amount of restitutionary damages. Id. 243 F.Supp.2d at 1009. Although the court stated "there is good reason to include" the civil penalty, it failed to explain the reason. Instead, the court cited three cases as support: Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042 (9th Cir.2000), Rosen v. Chrysler Corp., 205 F.3d 918, 922 (6th Cir.2000) and St. Paul Reinsurance Co., Ltd., v. Greenberg, 134 F.3d 1250, 1253 (5th Cir.1998). But unlike Brady, none of those cases included civil penalties in the amount in controversy calculation simply because plaintiff requested them in the complaint.

In Chabner, the Ninth Circuit simply recognized in a footnote that district courts "*could*" take treble damages into account in determining the amount in controversy. Id. 225 F.3d at 1046 n.3 (emphasis added). The court, however, chose not to rely on the alleged "questionable" diversity jurisdiction and instead found federal question jurisdiction existed. Id. In Rosen, the Sixth Circuit reversed the district court's ruling that the amount in controversy was not met because, in part, it "neglected to consider the possibility of treble damages in its analysis." Id. 205 F.3d at 922. Significantly, both plaintiff and defendant appeared to agree that "statutory trebling of damages [was] mandated by the New Jersey Consumer Fraud Act." Id. at 920, 922. Finally, in St Paul, the Fifth Circuit found in a bad-faith lawsuit that statutory damages should have been included in the amount in controversy because if the insured/plaintiff was successful "in recovering under the St. Paul policy, he will automatically recover 18 percent per annum damages." Id. 134 F.3d at 1255. None of these cases appear to support Brady's inclusion of a civil penalty in the calculation of the amount in controversy simply because the complaint included a prayer for a civil penalty.

Defendant also cites to Luna as support for its argument. However, Luna simply relied on Brady to find a Song-Beverly Act civil penalty should be included in the amount in controversy. Id., 2018 WL 2328365 at *3.

In contrast to Brady and Luna, Plaintiff cites several cases requiring defendants to demonstrate that including punitive damages in the amount in controversy calculation is reasonable. In Conrad Associates v. Hartford Accident & Indemnity Company, 994 F.Supp. 1196 (N.D. Cal. 1998), an insurance company defendant in a bad-faith case sought to include punitive damages in the amount in controversy. As support, defendant attached a number of jury verdicts awarding punitive damages and asserted the average amount of those verdicts should be used to calculate the amount in controversy. Id. at 1200. The court rejected the argument because the "defendant has made no effort to compare the facts of those cases with the alleged facts of this case." Id. at 1201. The court reasoned that "Defendant's burden cannot be met simply by pointing out that the

complaint seeks punitive damages and that any damages awarded under such a claim *could* total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages." Id.

Numerous other cases have followed the approach in Conrad. In Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216 (2d Cir. 2017), the court rejected the inclusion of punitive damages because the plaintiff failed to "supplement her complaint with additional *factual* allegations to support her request for punitive damages." Id. at 227 (emphasis in original). In Pontiero v. GEICO Gen. Ins. Co., 2017 WL 3475666 (C.D. Cal. Aug. 14, 2017), the court found that merely alleging the defendant acted intentionally did not provide sufficient information to infer that punitive damages may be available. Id. at *4. In Mendoza v. Subaru of Am., Inc., 2020 WL 1433427 (C.D. Cal. Mar. 24, 2020), the court denied the inclusion of civil penalties reasoning that "while civil penalties are available for willful failure to comply with the Song-Beverly Act, Defendant has not offered any evidence to support such an award." Id. at *2. See also Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (noting that in evaluating punitive damages in context of the amount in controversy requirement, defendants may introduce evidence of jury verdicts in cases involving analogous facts).

This Court agrees with Conrad and the other cases discussed in the previous paragraph. Rather than simply assuming that because a civil penalty is available, one will be awarded, the defendant must make some effort to justify the assumption by, for example, pointing to allegations in the Complaint suggesting such an award would be appropriate. Such an approach appears more consistent with the general principle that where the state-court complaint does not specify a damage figure, the defendant "must provide evidence establishing that it is 'more likely than not' that the amount in controversy" requirement is satisfied. Sanchez, 102 F.3d at 404; see also Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (finding that in

evaluating amount in controversy, courts may consider facts presented in the removal petition as well as any summary-judgment-type evidence).

Here, aside from citing Brady and Luna, Defendant makes no effort to explain why the amount in controversy should include a civil penalty of $83,175.84, other than stating that under Song-Beverly, a civil penalty "can be a maximum of two times the amount of Plaintiff's actual damages." (*Opp'n* 9:4–6.) Defendant fails to identify the allegations in the Complaint it believes would justify such an award; nor does Defendant submit evidence regarding the size of civil penalties awarded in analogous cases. Accordingly, the Court finds Defendant has failed to establish the amount in controversy should include a civil penalty.

### B. Attorney's Fees

Defendant also contends the amount in controversy should include $15,000, consisting of an estimate regarding Plaintiff's incurred and future attorney's fees in this case. (*Opp'n* 13:8–15:7.) Plaintiff's attorney's fees up to the time of removal were under $6,200. (*Johnson Decl.* [Doc 12-2] ¶ 3.) Plaintiff responds that first, under Song-Beverly, attorney's fees are considered part of costs, which are not considered in ascertaining the jurisdictional minimum and second, that including future attorney's fees in calculating the amount in controversy would be too speculative. (*Reply* 7:4–18.)

The Court is persuaded by Plaintiff's argument that attorney's fees are part of costs within the Song-Beverly Act. (*Reply* 7:10–15.) "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C.A. § 1332. The Song-Beverly Act states that a plaintiff may recover "costs and expenses, including attorney's fees." Cal. Civ. Code § 1794(d); see also Lopez, 2019 WL 4450427, at *2 ("[A]ttorneys' fees are 'costs and interests' within the definition of the [Song-Beverly] Act and are therefore excluded from the calculation."); Mendoza, 2020 WL 1433427, at *2 (same).

Additionally, there is a dispute in the Ninth Circuit regarding whether to include attorney's fees incurred after the date of removal in the amount in controversy.  See Stelzer v. CarMax Auto Superstores California, LLC, 2013 WL 6795615, * 6 (S.D.Cal. Dec. 20, 2013).  Although this Court would be inclined to follow those cases limiting the amount of attorney's fees to those actually incurred (id. and Wastier v. Schwan's Consumer Brands, 2007 WL 4277552 at *3 (S.D. Cal. Dec. 5, 2007)), the issue is unnecessary for the resolution of the pending motion.

As discussed above, Defendant has failed to establish the amount in controversy should include $83,175.84 in civil penalties.  Accordingly, even if the Court were to agree to include Defendant's estimate of $15,000 in attorney's fees that Plaintiff may incur, the jurisdictional limit would not be satisfied.

### C. Injunctive Relief

Defendant contends the value of the injunctive relief and restitution Plaintiff seeks should be included in ascertaining the amount in controversy.  (*Opp'n* 10:18–11:6.)

In determining the value of injunctive relief in the amount in controversy, the Ninth Circuit considers the value of the injunctive relief to either party in the action.  See Ridder Bros. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944) (citation omitted) ("The value of the 'thing sought to be accomplished by the action'[*sic*] may relate to either or any party to the action").  However, when a party provides the court with "absolutely no evidence which would allow [the court] to determine the extent of the loss which it might incur if an injunction is granted," the value of the injunction may not be included in the jurisdictional minimum.  See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 405 (9th Cir. 1996).

Here, Defendant fails to provide any evidence regarding the amount of money that it would expend if injunctive relief was granted.  Defendant only states, "it appears Plaintiff wants the Court to take appropriate action to ensure future compliance with applicable laws, and as such, the additional costs associated with complying with the

injunctive relief should also be considered to determine the amount in controversy." (*Opp'n* 10:25–28.)  Failure to specify the "additional costs" in complying with the injunctive relief renders Defendant's argument speculative and unsubstantiated.  Thus, this Court declines to consider the value of compliance with injunctive relief in ascertaining the jurisdictional minimum.

### IV. CONCLUSION & ORDER

Because Defendant has not established the amount in controversy exceeds $75,000, the Court **GRANTS** Plaintiff's motion [Doc. 12] and **ORDERS** the case remanded to the San Diego Superior Court.

**IT IS SO ORDERED.**

Dated:  November 17, 2020

_____
Hon. Thomas J. Whelan
United States District Judge